**BRIAN A., by his next friend, Bobbi Jean BROOKS, et al.**

v.

**Donald SUNDQUIST, et al.**

No. 300–0445.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 26, 2000.

David Louis Raybin, Jacqueline B. Dixon, Nashville, TN, Marcia Robinson Lowry, Ira P. Lustabader, New York City, for plaintiff.

Dianne Stamey Dycus, Nashville, TN, Elizabeth C. Driver, Nashville, TN, Douglas E. Dimond, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court is Defendants' Motion to Dismiss (Docket No. 19). For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part.

## FACTS

This is a civil rights action, brought by Plaintiffs under 42 U.S.C. § 1983 ("Section 1983") against Donald Sundquist, as Governor of the State of Tennessee, and George Hattaway, as Commissioner of the Tennessee Department of Children's Services ("DCS"), on behalf of a putative class consisting of all foster children who are or will be in the custody of DCS and a putative subclass of children within that class who are African–American. Complaint (Docket No. 1), ¶ 1.

Plaintiffs allege violations by Defendants of the United States Constitution, federal statutes and federal common law. Specifically, Plaintiffs contend that Defendants are violating their rights under the First, Ninth, and Fourteenth Amendments to the U.S. Constitution; under the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997 [42 U.S.C. §§ 620–27, 670–670a], and regulations promulgated thereunder; under the Americans with Disabilities Act [42 U.S.C. §§ 12101, et seq.]; under the Rehabilitation Act of 1973 [29 U.S.C. §§ 794, 794a]; under Title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d, et seq.] and its implementing regulations; and under federal common law, with Plaintiffs as alleged third-party beneficiaries to Tennessee's "State Plan" contract with the federal government, pursuant to the Adoption Assistance Act. Complaint (Docket No. 1), ¶ 63.

Plaintiffs allege a systemic failure by Defendants to fulfill their legal obligations to provide Plaintiffs with required services under federal law. This action seeks injunctive and declaratory relief, to halt the alleged violations and to ensure that Defendants protect and provide necessary and mandatory care to the foster children in state custody.

Defendants have moved to dismiss the action on several bases, including failure to state a claim for which relief can be granted and the doctrine of abstention.

## MOTIONS TO DISMISS

In considering a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept as true all factual allegations in the complaint. *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir.1994), *cert. denied,* 511 U.S. 1128, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994). The motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

A motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion. *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.,* 856 F.Supp. 1229, 1232 (S.D.Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993).

In other words, in deciding a motion to dismiss, the function of the district court is to test the legal sufficiency of the complaint. *City of Toledo v. Beazer Materials and Services, Inc.,* 833 F.Supp. 646, 650 (N.D.Ohio 1993). The district court is without authority to dismiss claims unless it can be demonstrated beyond doubt that

the plaintiff can prove no set of facts that would entitle him to relief. *Id.*

## ADOPTION ASSISTANCE ACT

Defendants first argue that Plaintiffs have failed to show that the Adoption Assistance Act ("AAA") creates any enforceable rights and, therefore, Plaintiffs' AAA claims should be dismissed.

 In order to seek redress through Section 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). Section 1983 is not available to enforce a violation of a federal statute "where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).[1]

 The Supreme Court has set forth a three-part test for determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. *Blessing*, 117 S.Ct. at 1359. Second, the plaintiff must demonstrate that the right assertedly pro-

tected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.* Third, the statute must unambiguously impose a binding obligation on the States. *Id.* "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.* (citing *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 510–11, 110 S.Ct. 2510, 2517–18, 110 L.Ed.2d 455 (1990)).[2] The Court, accordingly, must apply the *Wilder* framework to each of the portions of the AAA allegedly violated by Defendants.[3]

As noted by the Supreme Court, "[o]nly when the complaint is broken down into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights." *Blessing*, 117 S.Ct. at 1360.

*Right to Written Case Plans with Required Elements and a Review System [42 U.S.C. §§ 671(a)(10), 671(a)(16), 675(1), 675(5) and 622(b)(10)(B)(ii) ]*

 Plaintiffs assert that the AAA provides them with enforceable rights to timely written case plans, containing specific mandated elements, which are reviewed and updated at specific intervals, pursuant to 42 U.S.C. §§ 622(b)(10)(B)(ii),

---

1. There is no allegation in this case that Congress has foreclosed enforcement of the statute in the enactment itself.

2. The Court finds that *Wilder* was not overruled by the case of *Suter v. Artist M*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), and that *Wilder* and *Suter* are not inconsistent. *See Wood v. Tompkins*, 33 F.3d 600, 606 (6th Cir.1994); *Loschiavo v. City of Dearborn*, 33 F.3d 548, 551, n. 2 (6th Cir.1994); and *Tony L. v. Childers*, 71 F.3d 1182, 1188, n. 9 (6th Cir.1995); *see also Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1253 (7th Cir.1997); *Jordan v. City of Philadelphia*, 66 F.Supp.2d 638, 647–48

(E.D.Pa.1999); and *Marisol A. v. Giuliani*, 929 F.Supp. 662, 681–82 (S.D.N.Y.1996).

3. In light of the Sixth Circuit precedent footnoted above and the 1996 amendment codified at 42 U.S.C. § 1320a–10, the Court declines to follow the decisions in *Charlie H. v. Whitman*, 83 F.Supp.2d 476 (D.N.J.2000) and *Eric L. v. Bird*, 848 F.Supp. 303 (D.N.H. 1994), cited by Defendants, which held that the AAA creates no private right of action. *See also Yvonne L. v. New Mexico Dep't of Human Services*, 959 F.2d 883, 889 (10th Cir. 1992) ("individual causes of action [under the AAA] may be appropriate, depending upon the particular section or violation involved.").

671(a)(16), 675(1) and 675(5). Defendants argue that these provisions of the AAA do not create enforceable rights.

There is a clear split of authority on this issue. *Compare, e.g., Marisol A. v. Giuliani,* 929 F.Supp. 662 (S.D.N.Y.1996), *Norman v. McDonald,* 930 F.Supp. 1219 (N.D.Ill.1996), and *Jeanine B. v. Thompson,* 877 F.Supp. 1268 (E.D.Wis.1995) (holding that certain provisions of the AAA do create enforceable rights) *with Charlie H. v. Whitman,* 83 F.Supp.2d 476 (D.N.J. 2000), *Del A. v. Roemer,* 777 F.Supp. 1297 (E.D.La.1991) and *Eric L. v. Bird,* 848 F.Supp. 303 (D.N.H.1994) (holding that certain provisions of the AAA do not create enforceable rights).

The Supreme Court addressed one specific provision of the AAA in the case of *Suter v. Artist M,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). In *Suter,* the Court found that 42 U.S.C. § 671(a)(15) did not create a private right of action. That provision requires that "reasonable efforts" be made, prior to placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home and to make it possible for the child to return to his home. 42 U.S.C. § 671(a)(15). The *Suter* Court found that the "reasonable efforts" language does not "unambiguously confer an enforceable right upon the Act's beneficiaries." *Suter,* 112 S.Ct. at 1370.

After the *Suter* decision, Congress amended the AAA to provide as follows:

> In an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in Su-

ter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in Suter v. Artist M. that section 671(a)(15) of this title is not enforceable in a private right of action.

42 U.S.C. § 1320a–2 (2000 Supp.).

This Court does not read this Amendment as a clear expression of Congress's intent to create a private right of enforcement, however. *See Marisol A.,* 929 F.Supp. at 682. Rather, the Court is persuaded that Congress has expressed its intent for courts to apply pre-*Suter* case law to determine the private enforceability of the AAA provisions other than Section 671(a)(15). *Id.; see also Jeanine B.,* 877 F.Supp. at 1285.

In 1990, before *Suter,* the Sixth Circuit Court of Appeals held that foster parents have a private right of action under Section 1983 to enforce the rights afforded under the AAA. *Timmy S. v. Stumbo,* 916 F.2d 312, 316 (6th Cir.1990). *Timmy S.* dealt with Section 671(a)(12), a provision not at issue in this case or in *Suter.* The Sixth Circuit quoted its earlier decision in *Lesher v. Lavrich,* 784 F.2d 193, 197 (6th Cir.1986), where it had commented: "It may be reasonable to read the Adoption Assistance Act to permit parents and children affected by the programs it funds to sue to force those programs to comply with federal funding requirements . . . ." The court also relied upon the First Circuit case of *Lynch v. Dukakis,* 719 F.2d 504 (1st Cir.1983), wherein that court held that a class consisting of all children under the jurisdiction of Massachusetts' foster family home care system, and all members of the children's natural and foster families could maintain a Section 1983 action for prospective injunctive relief where it was alleged that the state had not complied

with a statutorily mandated procedure. *See Lynch,* 719 F.2d at 512.

The Sixth Circuit also considered, after *Suter,* the issue of whether certain Medicaid provisions give rise to rights enforceable under Section 1983. *Wood v. Tompkins,* 33 F.3d 600 (6th Cir.1994). The Court applied the *Wilder* three-part analysis in deciding whether such a private right of action existed. *Id.* at 606–08. Similarly, in *Tony L. v. Childers,* 71 F.3d 1182 (6th Cir.1995), the court applied the three-part *Wilder* test in determining whether the Child Abuse Prevention and Treatment Act created rights enforceable in a Section 1983 action.

Applying the *Wilder* factors to this case, it is clear that, in general, foster children are the intended beneficiaries of the AAA. *See Jeanine B.,* 877 F.Supp. at 1283. Specifically, foster children such as the Plaintiffs are the intended beneficiaries of Sections 622, 671 and 675. *See Marisol A.,* 929 F.Supp. at 683.

In addition, the language of the provisions at issue is mandatory—the State must meet certain requirements to be eligible for funding, to gain additional funding, and to avoid a reduction in funding. *Marisol A.,* 929 F.Supp. at 683. In other words, "Congress imposed a binding obligation by explicitly tying the creation of certain features of a state plan to federal funding." *Jeanine B.,* 877 F.Supp. at 1283.

Finally, the Court agrees with the courts in *Jeanine B.* and *Marisol A.* that these provisions are not too "vague or amorphous" to be enforced by the judiciary. *Id.; Marisol A.,* 929 F.Supp. at 683. For these reasons, the Court finds that these provisions of the AAA—requiring a written case plan with mandated elements and a periodic review system—do create rights

which are enforceable under Section 1983. *See also B.H. v. Johnson,* 715 F.Supp. 1387, 1402 (N.D.Ill.1989) (pre-*Suter* holding that the AAA creates an enforceable right to an individualized case plan and case review system) and *Norman v. McDonald,* 930 F.Supp. 1219, 1227 (N.D.Ill. 1996) (post-*Suter*) and cases cited therein.

As described by another court:

It would strain logic to hold that plaintiffs, as the intended beneficiaries of the Adoption Assistance Act, nevertheless are precluded from enforcing their rights under the Act. Moreover, the provisions of the Act itself persuade the Court that the Act creates enforceable rights. These provisions are extraordinarily specific, spelling out exactly what a state must do for children in its care in order to receive funding under the Act. Based on this, the Court holds that the Adoption Assistance Act, by its terms, "creates obligations 'sufficiently specific and definite' to be within 'the competency of the judiciary to enforce,' ... is intended to benefit the putative plaintiffs, and is not foreclosed 'by express provision or other specific evidence from the statute itself.' "

*LaShawn v. Dixon,* 762 F.Supp. 959, 989 (D.D.C.1991).

With regard to Defendants' argument that Plaintiffs have no right to the implementation of their case plans, the Court notes the following reasoning from the Sixth Circuit in *Wood:* "It is worth noting that the enforceable rights in question are not merely procedural rights that the state's plan make the relevant provisions. Rather, the rights that are enforceable include the substantive right that the state actually act in accordance with its plan; it must implement that which it assures." *Wood,* 33 F.3d at 608, n. 16.[4]

---

4. *Wood* involved provisions of the Medicaid Act which allowed participating states to apply for waivers of various requirements in order to provide home and community-based

In *Wilder,* the Supreme Court held that the Medicaid Act provided an enforceable right to "the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients." *Wilder,* 110 S.Ct. at 2517. In so doing, the Court noted: "the right is not merely a procedural one that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy; rather the Act provides a substantive right to reasonable and adequate rates as well." *Id.* The Court went on:

> Any argument that the requirements of findings and assurances are procedural requirements only and do not require the State to adopt rates that are actually reasonable and adequate is nothing more than an argument that the State's findings and assurances need not be correct.
>
> We reject that argument because it would render the statutory requirements of findings and assurances, and thus the entire reimbursement provision, essentially meaningless. It would make little sense for Congress to require a State to make findings without requiring those findings to be correct. In addition, there would be no reason to require a State to submit assurances to the Secretary if the statute did not require the State's findings to be reviewable in some manner by the Secretary.
>
> . . . . .
>
> Rather, the only plausible interpretation of the amendment is that by requiring a State to find that its rates are reasonable and adequate, the statute imposes

the concomitant obligation to adopt reasonable and adequate rates.

*Wilder,* 110 S.Ct. at 2519–20.

Defendants argue that the language of Section 671(a)(10) specifically is too vague and amorphous to be enforced pursuant to Section 1983. There is a split of authority on this particular provision as well. Section 671(a)(10) provides that the State shall have a plan approved by the Secretary which:

> provides for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, and provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part of part B of this subchapter;

42 U.S.C. § 671(a)(10) (Supp.2000).

Both the *Jeanine B.* and the *Marisol A.* courts, whose reasoning the Court finds persuasive, found that the language of Section 671(a)(10) was not so vague or amorphous as to make judicial enforcement impossible. *Marisol A.,* 929 F.Supp. at 683; *Jeanine B.,* 877 F.Supp. at 1284 ("These provisions are not vague, not amorphous, and certainly not beyond a court's ability to understand and to enforce."). *Compare Yvonne L.,* 959 F.2d at 889 (holding that the language of Section 671(a)(10) is the

---

health services. Under these provisions, states could not obtain waivers unless they provided "assurances satisfactory to the Secretary" that their waiver plans included "necessary safeguards ... to protect the health and welfare" of individuals receiving home

health care. *Wood,* 33 F.3d at 602. The court found there was nothing vague or amorphous about those provisions, since they "involve unambiguous directives that are well within the ability of the judiciary to enforce." *Id.* at 608.

type of vague and amorphous language identified in *Wilder* that cannot be judicially enforced).

The Court finds the language of Section 671(a)(10) to be sufficiently specific to create a private right of action for enforcement thereof. In contrast to the *Suter* language simply requiring the state to make "reasonable efforts" with no elaboration on what that entailed, this section requires that the state establish standards "reasonably in accord with recommended standards of national organizations concerned with the standard for such institutions or homes."

For all these reasons, the Court finds that Plaintiffs have properly alleged claims pursuant to Sections 671(a)(10) and (16), 675(1) and (5) and 622(b)(10)(B)(ii), and Defendants' Motion to Dismiss those claims is DENIED.

*Right to Statewide Information System Which Meets Statutory Requirements [42 U.S.C. § 622(b)(10)(B)(i) ]*

■ Defendants contend that there is no private right of action for the enforcement of Section 622(b)(10)(B)(i), which requires the state to operate, to the satisfaction of the Secretary, a statewide information system "from which can be readily determined the status, demographic characteristics, location, and goals for the placement of every child who is (or, within the immediately preceding 12 months, has been) in foster care." *Id.*

Defendants argue that the reason this provision does not create an enforceable right is that it was not intended to benefit individual children. Plaintiffs, on the other hand, contend that because the information system required by this statute directly tracks the information on which decisions are based concerning where a child will live and what services he or she will receive, it certainly does involve direct benefits to individual children. Plaintiffs allege that Defendants' lack of such an adequate information system has harmed the Plaintiff children.

This Court agrees that if the state maintains a statewide information system from which the required information may be readily determined for every child in foster care, then the children in foster care individually benefit therefrom; conversely, if the state fails to maintain such an adequate information system (status, demographic characteristics, location, and goals for placement of every child), it is the foster children who are individually harmed.

Accordingly, based upon the above authorities, the Court finds that Plaintiffs have properly alleged claims pursuant to Section 622(b)(10)(B)(i), and Defendant's Motion to Dismiss those claims is DENIED.

For all the above reasons, Plaintiff's AAA claims do state claims for which relief may be granted, and Defendant's Motion to Dismiss the AAA claims is DENIED.

## AMERICANS WITH DISABILITIES ACT

Since the filing of this action and the pending Motion to Dismiss, the Sixth Circuit Court of Appeals has held that Congress exceeded its authority when it abrogated Eleventh Amendment immunity by applying the Americans with Disabilities Act ("ADA") to the States. *Popovich v. Cuyahoga County Court of Common Pleas,* 227 F.3d 627 (6th Cir.2000).

In light of this holding by the Sixth Circuit, the Court finds that Defendants' Motion to Dismiss Plaintiffs' ADA claims against these State Defendants should be granted, and those claims are DISMISSED.[5]

---

5. The Court is aware that this issue has been presented this term to the U.S. Supreme Court. Until that Court rules, however, the

## REHABILITATION ACT

The parties have not had an opportunity to brief what effect, if any, *Popovich* has on the Rehabilitation Act claims in this case. Accordingly, the Motion to Dismiss is DENIED on the Rehabilitation Act issues, pending the filing of a supplemental motion by the Defendants and full briefing by the parties on this issue.

## TITLE VI

Plaintiffs also assert claims, on behalf of the proposed subclass of African–American foster children, under Title VI of the United States Code, which provides, at Section 601:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial assistance.

42 U.S.C. § 2000d.

■ The Supreme Court has stated that Title VI was intended to "halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution." *Regents of the University of California v. Bakke*, 438 U.S. 265, 284, 98 S.Ct. 2733, 2745, 57 L.Ed.2d 750 (1978). The Supreme Court has also recognized an implied private cause of action to enforce Section 601 of Title VI. *See Alexander v. Choate*, 469 U.S. 287, 293–94, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). There is an implied right of action to enforce both the statute and the implementing regulations promulgated thereunder. *Sandoval v. Hagan*, 197 F.3d 484, 502

(11th Cir.1999).[6] In addition, there is an implied right of action to pursue a disparate impact theory. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356, n. 5 (6th Cir. 1996).

■ To state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal assistance. *Grimes v. Superior Home Health Care*, 929 F.Supp. 1088, 1092 (M.D.Tenn.1996).

■ There is no dispute in this case that Defendants receive federal assistance. The Court also finds that Plaintiffs' Complaint herein sufficiently states, for purposes of a motion to dismiss, claims that Defendants are engaging in racial discrimination. For example, Plaintiffs allege that the administration of child welfare services in Tennessee has the effect of subjecting children in the African–American subclass to discrimination based upon their race. Complaint, ¶ 209. Plaintiffs also contend that the administration of these services in Tennessee has the effect of defeating or substantially impairing the accomplishment of the objectives of the services to foster children, with respect to the subclass of African–American children. *Id.*

In support of these claims, Plaintiffs cite to a recent Comptroller's Report, which they contend shows evidence of systemic intentional discrimination as well as disparate impact. Complaint, ¶¶ 211–214. In addition, the named Plaintiffs who fall in the proposed subclass, Brian A., Jack C., Charles C. Denise E. and Charlette F.,

---

Court is bound by the precedent of the Sixth Circuit.

**6.** Plaintiffs also assert a claim under the implementing regulation which provides that entities receiving federal assistance may not, in administering their programs, use criteria or methods of administration which have the

effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respect individuals of a particular race, color, or national origin. 45 C.F.R. § 80.3(b)(2).

allege specific injury as a result of Defendants' discriminatory practices. See Complaint, ¶¶ 84–85, 97, 102–103, 112, 115, 120–121.

Viewing all these allegations in the light most favorable to the Plaintiff, the Court finds that Defendants' Motion to Dismiss Plaintiffs' Title VI claims should be DENIED.

## FEDERAL COMMON LAW

Plaintiffs' Complaint alleges that Plaintiffs are third-party beneficiaries to the "State Plan" contract between the State of Tennessee and the federal government. Pursuant to the AAA and federal common law, Plaintiffs assert a cause of action for violation of their rights under that contract. See Complaint (Docket No. 1), ¶¶ 23, 70–71 and 219. Defendants contend first that the "State Plan" does not constitute a contract; and, secondly, that, even if it were, Plaintiffs are not third-party beneficiaries who may enforce such a contract. Finally, Defendants argue that the Eleventh Amendment bars any remedial relief to the Plaintiffs.

Plaintiffs respond by first noting that this question should not be decided on a motion to dismiss, given that the contract itself is not even in evidence. See Thomas v. New York City, 814 F.Supp. 1139, 1152 (E.D.N.Y.1993). Alternatively, Plaintiffs argue the "State Plan" is a contract, to which Plaintiffs are third party beneficiaries. Plaintiffs assert that federal common law governs this claim because the State Plan contract was entered into pursuant to the AAA, a federal statute, and significant federal interests and obligations are at stake.

The Supreme Court has held that legislation enacted pursuant to the spending power of Congress is much in the nature of a contract: "in return for federal funds, the States agree to comply with federally imposed conditions." Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981). It is also recognized that, under certain circumstances, parties can be third party beneficiaries to such contracts between the federal government and local or state agencies. See, e.g., Concerned Tenants Ass'n of Father Panik Village v. Pierce, 685 F.Supp. 316, 324 (D.Conn.1988) (tenants have enforceable rights as intended beneficiaries to obtain compliance with obligations under contract between HUD and local agency); Holbrook v. Pitt, 643 F.2d 1261, 1273 (7th Cir.1981) (tenants were third party beneficiaries of HUD contracts with owners); Dewakuku v. Cuomo, 107 F.Supp.2d 1117, 1134–35 (D.Ariz. 2000) (purchaser of substandard housing was intended third party beneficiary of contract between HUD and housing authority); and Beverly v. Macy, 702 F.2d 931, 942–43 (11th Cir.1983) (policyholder was third party beneficiary to agreement between National Flood Insurers Association and insurer).

In determining whether Plaintiffs are intended third party beneficiaries of the alleged contract in this case, the Court must first decide whether federal or state common law applies. See Dewakuku, 107 F.Supp.2d at 1131. Although it is true that the United States is a party, through its Department of Health and Human Services, to the alleged contract at issue, the United States is not a party to this action. The Complaint raises no question regarding the liability of the United States or the responsibilities of the United States under the alleged contract. See Miree v. DeKalb County, Georgia, 433 U.S. 25, 28, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977) (holding that state law applied to petitioners' breach-of-contract claim as third party beneficiaries); see also Dewakuku, 107 F.Supp.2d at 1131 (federal common law applies to third party beneficiary claims when a federal agency is a party to the

action and the outcome may directly affect financial obligations of the United States).

The Sixth Circuit Court of Appeals has also noted: "We have held that the authority to create a federal common law rule without reference to a statute or Constitution exists only 'in such narrow areas as those concerned with the rights and obligations of the United States, interstate or international disputes implicating the conflicting rights of the States or relations with foreign nations, and admiralty cases.'" *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1249 (6th Cir.1996).

The "contract" between the parties is not before the Court. Therefore, the full scope of the United States' interests is not clear for purposes of making the threshold determination of whether federal or state common law applies. In any event, the Court cannot determine the rights of the parties to a contract that is not in the record. Accordingly, the Motion to Dismiss the contract claims is DENIED, without prejudice to the filing of a motion for summary judgment addressing these issues.

### SUBSTANTIVE DUE PROCESS

Plaintiffs allege violations of their rights under the First, Ninth and Fourteenth Amendments to the United States Constitution. Among other things, Plaintiffs allege that the systemic deficiencies in Defendants' foster care program violate the children's recognized substantive due process rights under the Fourteenth Amendment. More specifically, Plaintiffs contend that the actions and inactions of Defendants are inconsistent with the exercise of reasonable professional judgment and also amount to a pattern, practice and custom of deliberate indifference to the constitutional rights of children in the proposed class. Complaint, ¶ 215.

The Sixth Circuit Court of Appeals has stated that substantive due process is a "doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992). Substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, the government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose. *Bartell v. Lohiser*, 215 F.3d 550, 557–58 (6th Cir.2000).

Substantive due process rights are rights such as those listed in the Bill of Rights and those rights held to be so fundamental that a state may not take them away. *Taylor v. Ledbetter*, 818 F.2d 791, 794 (11th Cir.1987). The Supreme Court has recognized such fundamental rights as abortion, privacy, marriage, and safety and physical movement. *Id.*

Defendants move to dismiss Plaintiffs' substantive due process claim, arguing that nothing they did or failed to do amounted to a violation of any recognized substantive due process rights. Defendants argue that children in foster care are entitled simply to be protected from harm of which the government officials know or should have known and that, at most, foster children are entitled simply to provision for their basic human needs. In other words, Defendants ask this Court to interpret very narrowly the substantive due process rights afforded foster children in the past.

The Sixth Circuit has held that children in state-regulated foster homes have substantive due process rights to be free from the infliction of unnecessary harm. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.1990); *see also Lintz v. Skipski*, 25 F.3d 304, 305 (6th

Cir.1994) (it was "clearly established," for purposes of qualified immunity analysis, that substantive due process extends to children in state-regulated foster care homes a right to be free from infliction of unnecessary harm).

Other circuits have found similar rights. *Norfleet v. Arkansas Dep't of Human Services*, 989 F.2d 289 (8th Cir.1993) (state had obligation to provide child in foster care with adequate medical care, protection and supervision); *Yvonne L. v. New Mexico Dep't of Human Services*, 959 F.2d 883 (10th Cir.1992) (children in foster care had constitutional right to be reasonably safe from harm); *Doe v. New York City Dep't of Social Services*, 649 F.2d 134 (2d Cir.1981) (child in state custody had constitutional right not to be placed in foster care setting known to be unsafe); *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir.1987) (child placed in foster home may bring Section 1983 action for violation of Fourteenth Amendment rights).

Plaintiffs contend that the following substantive due process rights have been violated by Defendants: right to protection from harm; right not to be harmed while in state custody; right not to be deprived of their liberty unnecessarily by retention in state custody; right to be placed in the least restrictive, most appropriate, family-like setting while in state custody; right to treatment consistent with the purpose of the state's assumption of custody; right to receive care, treatment and services consistent with accepted, reasonable professional judgment; and right to protection from state-created dangers. Complaint, ¶ 215.

In determining whether Plaintiffs have stated a claim for violation of their substantive due process rights, this Court applies the Supreme Court's analysis in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In that case, the Court found that the proper standard for determining whether a state had adequately protected the rights of an individual involuntarily committed to a state institution for the mentally retarded was whether professional judgment in fact was exercised. *Youngberg*, 457 U.S. at 321, 102 S.Ct. at 2461; *see also Yvonne L.*, 959 F.2d at 894 (applying the professional judgment standard in a foster care case).

This constitutional norm is violated "only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 102 S.Ct. at 2462. The Court held that the issue is whether in fact professional judgment was exercised, and the courts should defer to this professional judgment, which is presumptively valid. *Id.* at 2461–62. "It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.*

Although, in other contexts, courts have required a finding of "deliberate indifference" to the plaintiffs' substantive due process rights (for example, in prison cases), this Court agrees with the logic in *LaShawn A. v. Dixon*, 762 F.Supp. 959 (D.D.C.1991), where the court held that children in foster care were more analogous to the plaintiffs in *Youngberg* than to incarcerated prisoners. *Id.* at 996. That court noted:

As the *Youngberg* decision recognizes, the rights of a person in the civil custody of the state are greater than the rights of a person in the state's criminal custody. The foster children that make up the plaintiff class in this case have done society no wrong and they deserve no punishment. It would be inappropriate to force them to endure constitutional deprivations absent a showing of "delib-

erate indifference" by their caretakers. At the same time, it would be inappropriate to hold caretakers liable for constitutional deprivations when those caretakers had exercised their professional judgment in determining the best course of conduct.

*Id.*

 Applying the professional judgment standard to this case, the Court finds that Plaintiffs' Complaint adequately alleges conduct establishing violations of substantive due process rights. Plaintiffs' Complaint alleges specific occurrences which, if true, would indicate a lack of professional judgment on the part of Defendants.

Because this Court must accept all allegations of the Complaint as true, it cannot dismiss Plaintiffs' substantive due process claims at this juncture. Accordingly, Defendants' Motion to Dismiss the substantive due process claims is DENIED.

## PROCEDURAL DUE PROCESS

Plaintiffs allege that they have certain federally-created and state-created property and/or liberty interests of which they have been deprived without due process of law. Plaintiffs contend that the actions and inactions of the Defendants have violated Plaintiffs' procedural due process rights.[7]

Defendants, on the other hand, argue four reasons why Plaintiffs' procedural due process claims should fail: (1) Eleventh Amendment; (2) no constitutionally-protected liberty or property interests under state law; (3) federally-based claim is simply a rehash of claim to private right of action under federal statutes; and (4) in-

sufficient pleading. The Court will deal with these arguments in turn.

 The Eleventh Amendment bars state law claims brought in federal court against the State. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Plaintiffs' due process claims are not state law claims, however. Plaintiffs allege state law merely as the basis for their alleged constitutionally-protected property interests. Property interests are not created by the Constitution; rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

As with the rights alleged in *Cassidy v. Adams,* 872 F.2d 729, 732 (6th Cir.1989), the state law which Plaintiffs allege was systematically violated may have conferred constitutionally protected rights. Thus, resolution of the state law questions is a prerequisite to resolution of the constitutional questions presented. *Id.; see also Spruytte v. Walters,* 753 F.2d 498, 514 (6th Cir.1985).

 Plaintiffs' action for violation of their due process rights cannot be characterized as an action based upon state law. *Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1543–44 (6th Cir.1994). And, as noted by that court, the Eleventh Amendment does not bar Section 1983 actions brought against state officials in their

---

7. Procedural due process rights, unlike substantive due process, involve expectations created by state law. *Taylor,* 818 F.2d at 794. As to these rights, the state may take them away by affording predeprivation hearings or postdeprivation hearings or by providing oth-

er safeguards. *Id.* Procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests. *Bartell v. Lohiser,* 215 F.3d 550, 557 (6th Cir.2000).

official capacities seeking prospective injunctive relief. *Id.*

Accordingly, Defendants' Motion to Dismiss the procedural due process claims based upon the Eleventh Amendment is DENIED.

Defendants next argue that the relevant state law does not create any constitutionally protected rights anyway. Relying primarily upon *Tony L. v. Childers*, 71 F.3d 1182 (6th Cir.1995), Defendants assert that because the statutes at issue do not place substantive limitations upon official discretion and mandate particular substantive outcomes, they cannot be the basis for creating liberty interests which must be afforded procedural due process protections.

Citing Supreme Court authority, the Sixth Circuit held in *Tony L.* that state-created liberty interests arise when a states places "substantive limitations on official discretion." *Tony L.*, 71 F.3d at 1185 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)). A state substantively limits official discretion by establishing substantive predicates to govern official decisionmaking and by mandating the outcome to be reached upon a finding that the relevant criteria have been met. *Id.* The state statutes or regulations in question must also use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present. *Id.* Finally, the statute or regulation must require a particular substantive outcome. *Id.*

Plaintiffs, citing another Sixth Circuit opinion, *Meador v. Cabinet for Human Resources*, 902 F.2d 474 (6th Cir.1990), argue that the Tennessee child welfare laws speak in mandatory, nondiscretionary terms that create due process interests. In *Meador*, the court analyzed Kentucky's child welfare statutes and held that they gave the plaintiff children an entitlement to protective services of which they could not be deprived without due process of law. *Id.* at 477.

Unlike this case, *Tony L.* dealt with children who were not in state custody, children who alleged violations of Kentucky's child protection laws and the Child Abuse Prevention and Treatment Act. As Plaintiffs point out, that court specifically noted that it was not dealing with any provisions concerning children in state custody. *Tony L.*, 71 F.3d at 1185, n. 3. The *Tony L.* court distinguished *Meador* by noting this difference and stating:

> No matter what action an official takes to further the safety of children in foster homes, only one relevant policy goal will be furthered: the policy of making foster homes safe. The exercise of official discretion will not affect the substantive outcome. Thus, the existence of discretion in Meador did not defeat the plaintiffs' liberty interest.
>
> When the Cabinet receives a report of child abuse, it must balance the need to protect the child with the need to protect the integrity of the biological family. The exercise of discretion may affect the substantive outcome. Thus, discretion is inherently necessary to effectuate the policy goals of the statutes in this case. This was not true in Meador.

*Id.*

Based upon the reasoning set forth in *Meador*, the Court finds that *Tony L.* is not applicable on this issue. The Court finds that the state laws at issue herein give Plaintiffs certain entitlements of which they cannot be deprived without procedural due process. Defendants' Motion to Dismiss based upon this argument is DENIED.

As noted above, Plaintiffs also claim certain liberty interests created by federal laws, interests of which they allegedly cannot be deprived without due process of

law. Defendants argue that Plaintiffs' procedural due process claims based upon federal laws are merely repetitive of their Section 1983 claims for direct violations of those laws.

Defendants rely upon *Charlie H. v. Whitman*, 83 F.Supp.2d 476 (D.N.J.2000), in arguing that because the liberty interests alleged by Plaintiffs are nearly mirror images of the Section 1983 rights alleged, Plaintiffs cannot establish the existence of any liberty interests that would entitle them to due process. *See Charlie H.*, 83 F.Supp.2d at 511–12. In that case, however, the court had found that Plaintiffs had no private rights of action under the federal statutes at issue. *Id.* at 481–502. This Court has found otherwise.

■ Finally, Defendants contend that even if Plaintiffs could point to an entitlement, they have not sufficiently pled a deprivation of rights without due process. Defendants cite to Tennessee's extensive judicial and quasi-judicial procedures for foster care families, procedures which Defendants contend provide sufficient notice and opportunity to be heard. What Defendants overlook, however, is Plaintiffs' clear allegations of failures to provide those procedures, failures to conduct administrative or judicial reviews, and failures to conduct permanency hearings. In other words, Plaintiffs contend that the statutorily-created procedures cited by Defendants are routinely ignored. The Court finds that Plaintiffs' Complaint sufficiently sets forth facts which, if true, could support a finding of a deprivation of rights without procedural due process.

For all these reasons, Defendants' Motion to Dismiss Plaintiffs' procedural due process claims is DENIED.

## FIRST AND NINTH AMENDMENT CLAIMS

Plaintiffs have alleged that Defendants' systematic actions and inactions have violated their rights under the First and Ninth Amendments not to be deprived of family relationships absent compelling reasons. Defendants argue that all such claims should be dismissed because the facts alleged fail even to relate to such claims or because they fail to rise to the level of a constitutional deprivation.

Plaintiffs' allegations are based upon the recognized constitutional right to freedom of association. *See Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The Supreme Court "has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.*, 104 S.Ct. at 3249. "In this respect, freedom of association receives protection as a fundamental element of personal liberty." *Id.*[8]

Defendants' argument on this point misperceives the Court's task on a Motion to Dismiss. Defendants basically argue that Plaintiffs' allegations concerning the First and Ninth Amendment violations are not true. *See* Docket No. 20, p. 45. The Court, accepting the allegations of the Complaint as true, cannot make such judgments on this motion.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' First and Ninth Amendment claims is DENIED.

---

8. In *Aristotle P. v. Johnson*, 721 F.Supp. 1002, 1005 (N.D.Ill.1989), that court found that the foster children's relationships with their siblings were the sort of "intimate human relationships" protected from unjustified interference by the State.

## ABSTENTION

■ Defendants submit that the Court should abstain from hearing Plaintiffs' claims pursuant to the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In considering whether *Younger* abstention is appropriate, this Court must look to the following factors: (1) whether there are ongoing state judicial proceedings; (2) whether the proceedings implicate important state interest; and (3) whether there is an adequate opportunity in the state proceedings to present constitutional challenges. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Kelm v. Hyatt,* 44 F.3d 415, 419 (6th Cir.1995).

The Sixth Circuit Court of Appeals "has squarely held that abstention from hearing claims of institutional violation of rights guaranteed by the U.S. Constitution is inappropriate and federal courts must hear federal constitutional claims." *Hanna v. Toner,* 630 F.2d 442, 444 (6th Cir.1980); *see also Timmy S. v. Stumbo,* 537 F.Supp. 39, 46 (E.D.Ky.1981) (abstention not appropriate in civil rights case).

■ Certainly this case implicates important state interests. The Court finds Defendants' contention that there are ongoing state judicial proceedings, however, to be misleading. It is true that Tennessee has in place a system of procedures for bringing and maintaining a child under the jurisdiction of a juvenile court. It is true that there are ongoing and pending state proceedings concerning individual foster children; but nothing about this litigation seeks to interfere with or enjoin those proceedings. Rather, Plaintiffs seek injunctive relief against the Department of Children's Services, not the courts.

Further, the Court finds that the juvenile courts of Tennessee are not more appropriate vehicles for adjudicating the claims raised in this putative class action.

Although technically Plaintiffs could raise constitutional questions in their individual juvenile proceedings, there is no pending judicial proceeding which could serve "as an adequate forum for the class of children in this case to present its multifaceted request for broad-based injunctive relief" based on the Constitution and on federal and state law. *See LaShawn A. v. Kelly,* 990 F.2d 1319, 1323 (D.C.Cir.1993).

Instead, Plaintiffs' federal constitutional claims herein represent, as did the claims in *Hanna,* "the exact sort of disputes over citizens' rights with which the federal courts were created to deal." *Hanna,* 630 F.2d at 446. The Court declines Defendants' invitation to abstain from hearing these claims. Accordingly, Defendants' Motion to Dismiss based upon the doctrine of abstention is DENIED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (Docket No. 19) is GRANTED in part and DENIED in part. Plaintiffs' ADA claims are DISMISSED.

IT IS SO ORDERED.