# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THERESA BAINES SMITH, and | : | |
| DEPAUL SMITH | : | K15C-11-018 JJC |
| | : | In and for Kent County |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GREGORY BUNKLEY, STATE OF | : | |
| DELAWARE, a governmental Entity, | : | |
| DEPARTMENT OF SERVICES FOR | : | |
| CHILDREN, YOUTH AND THEIR | : | |
| FAMILIES, an agency of the State of | : | |
| Delaware, DELAWARE DIVISION OF | : | |
| FAMILY SERVICES, an agency of the | : | |
| State of Delaware, JENNIFER RANJI, | : | |
| in her official capacity, VICKY KELLY, | : | |
| in her official capacity, JOHN DOE | : | |
| 1-10, in their official and individual | : | |
| capacities, and JOHN DOE 11-20, in | : | |
| their official and individual capacities, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## OPINION

Submitted: June 9, 2016
Decided: August 3, 2016

Andrew R. Silverman, Esquire, & Cara E. Williams, Esquire, MACELREE HARVEY, LTD., Centerville, Delaware; and William T. Wilson, Esquire, MACELREE HARVEY, LTD., West Chester, PA, *Attorneys for Appellant.*

Gregory Bunkley, *pro se*

Ryan P. Connell, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorney for State Defendants.*

Clark, J.

# I. INTRODUCTION

Defendants, the State of Delaware, Delaware Department of Services for Children, Youth and their Families, Delaware Division of Family Services, Jennifer Ranji in her official capacity, and Vicky Kelly in her official capacity (hereinafter collectively referred to as the "State Defendants"), have moved to dismiss Plaintiffs Theresa Baines Smith (hereinafter "Ms. Smith" or "Theresa Smith") and DePaul Smith's amended complaint. This suit arises from allegations that a Division of Family Services Family Crisis Therapist, Defendant Gregory Bunkley (hereinafter "Bunkley") sexually harassed, sexually abused, and sexually assaulted Ms.Smith between January and the late summer of 2014. In addition to direct claims against Bunkley as an individual, the Smith Plaintiffs sued the State Defendants on various state and federal law grounds. In support of some of these claims, Ms. Smith alleges that she had a mental impairment qualifying as a disability.

The State Defendants move to dismiss all claims against them pursuant to Superior Court Civil Rule 12(b)(1) on sovereign immunity grounds, and separately pursuant to Superior Court Civil Rule 12(b)(6). The counts relevant to the State Defendants include claims based upon the Child Abuse Prevention and Treatment Act[1]

---

[1] 42 *U.S.C.* § 5101, *et seq*.

(herinafter "CAPTA"),  the Rehabilitation Act[2], the American with Disabilities Act (hereinafter "ADA")[3], and alleged grossly negligent supervision and hiring.

The Court finds that all state law claims against the State Defendants are barred by sovereign immunity.  Furthermore, the Court dismisses the Smith Plaintiffs' CAPTA claims against the State Defendants because that statute neither provides a private cause of action or creates a right that can be separately enforced pursuant to 42 U.S.C.  § 1983.  Finally, pursuant to the Rehabilitation Act, Ms. Smith fails to state a claim upon which relief can be granted against the State Defendants.  Accordingly, the State Defendants' motion to dismiss all claims plead against  them is **GRANTED.**

## II.  PROCEDURAL AND FACTUAL BACKGROUND

Since this matter involves a motion to dismiss pursuant to Rule 12(b), all facts alleged in the amended complaint are accepted as true and are those that are referenced herein.  In November 2013,  Ms. Smith moved to Dover, Delaware with her husband, DePaul Smith, and their three-year old child. At the time, Ms. Smith was eight months pregnant.  She also has a mental impairment that substantially limits one or more of her life activities, and one of her children has Down's Syndrome.  In late November 2013, the Division of Family Services assigned Bunkley to Theresa Smith's family as a

---

[2] 29 U.S.C. § 794.

[3] 42 U.S.C. A. § 12112 *et seq*.

Family Crisis Therapist.  Bunkley's Family Crisis Therapist position exists to further government social welfare programs implemented by the State Defendants.  These programs are funded, at least in part, by the federal government through statutes such as the Children's Justice Act and CAPTA.

Prior to Bunkley's hiring, he had a history of multiple arrests and convictions for sexually motivated offenses dating back to 1993. Soon after his assignment, Bunkley engaged in an escalating pattern of unwelcome sexual harassment of Ms. Smith including: making unwelcome and sexually oriented comments and jokes; attempting to alienate Theresa Smith from her husband, and children; and sexually assaulting her.

As alleged, with knowledge of Ms. Smith's mental impairment, Bunkley threatened to use his influence, power, and control as a Family Crisis Therapist to take her children away from her.  He also coerced Ms. Smith to perform sexual acts with him on ten to fifteen occasions between January and the late summer of 2014.  This conduct occurred during the course of Bunkley's work as a Family Crisis Therapist, and through the use of a facility and automobile owned and operated by the State Defendants.

Plaintiffs filed a complaint alleging state law torts claims against Bunkley and the State Defendants. They included Ms. Smith's claims of assault and battery, intentional infliction of emotional distress, negligence, and negligent infliction of

4

emotional distress. Depaul Smith also claimed for loss of consortium. The State Defendants moved to dismiss Plaintiffs' complaint on Rule 12(b)(6) grounds on January 12, 2016. Thereafter, on February 16, 2016, Plaintiffs filed an amended complaint maintaining the original five state tort claims, but also amending the negligence claim to one alleging gross and wanton negligence. Furthermore, Ms. Smith added four additional federal law claims. She also added, as defendants, State John Doe Defendants 1-20, in their individual and official capacities. She alleged that the John Doe Defendants are as of yet unknown employees, agents, and/or representatives of the State Defendants. In addition, the amended complaint included counts alleging violations of CAPTA; violations of the Rehabilitation Act and the ADA; and various deprivations of constitutional rights actionable pursuant to 42 U.S.C. §1983.

The State Defendants moved to dismiss all allegations in the amended complaint against them. Plaintiffs opposed the motion. After oral argument, the Smith Plaintiffs requested and were granted the opportunity to provide supplemental briefing on the issue of whether CAPTA creates a privately enforceable right or a private cause of action.

## III. STANDARD

When deciding a motion to dismiss pursuant to Superior Court Civil Rule

5

12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[4] The test for sufficiency is a broad one: the complaint will survive the motion to dismiss so long as "a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[5] Stated differently, a complaint will not be dismissed unless it clearly lacks factual or legal merit.[6]

## IV. DISCUSSION

The State Defendants move to dismiss Plaintiffs' amended complaint on four grounds. They allege that: (1) sovereign immunity bars all Plaintiffs' claims; (2) alternatively, qualified immunity would bar Plaintiffs' state law claims; (3) CAPTA does not provide a private right of action; and (4) discrimination, pursuant to the Rehabilitation Act, was not properly plead. Plaintiffs concede that sovereign immunity bars their state law claims. However, they argue that the State Defendants and John Doe Defendants are potentially liable for their alleged gross negligence pursuant to the State Tort Claims Act. Plaintiffs further contend that CAPTA provides a private right of action and that discrimination is adequately plead for purposes of a Rule 12(b)(6) analysis.

---

[4] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[5] *Id.* (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

[6] *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

For the reasons discussed below, the Court finds that sovereign immunity bars all state law claims against the State Defendants, as well as Ms. Smith's ADA claims. Furthermore, the Court holds that CAPTA does not enable a private right of action. The Court also finds that the amended complaint does not allege sufficient facts to establish a *prima facie* case of discrimination against the State Defendants pursuant to the Rehabilitation Act. Finally, the allegations against the John Doe defendants have no legal effect. Accordingly, the Court dismisses all claims against the State Defendants.

**A. Sovereign immunity bars all state law claims against the State Defendants, as well as Theresa Smith's ADA claim.**

At oral argument, the Smith Plaintiffs conceded that sovereign immunity bars their state law claims, with the exception of the newly raised gross negligence allegation in count three. Furthermore, Ms. Smith argues that sovereign immunity does not bar her claims under the Rehabilitation Act and CAPTA because they are federal grant programs that provide funding to the State, and when the State accepts such fundings it waives the defense of sovereign immunity.

The Delaware Constitution, in Article I, section 8, provides sovereign immunity to the State, which is "an absolute bar to all suits against the State unless by legislative

act the General Assembly has waived the immunity."[7]  Therefore, "[t]here can be no question that the doctrine of sovereign immunity provides that neither the State nor a State agency can be sued without its consent. The General Assembly, however, can waive sovereign immunity by an Act that clearly evidences an intention to do so."[8] Separately, in the federal law context, the Eleventh Amendment to the United States Constitution also provides sovereign immunity to the states regarding federal law actions.[9]

In order for a plaintiff to prevail in a suit against the State, a plaintiff must show that: (1) the State has waived the defense of sovereign immunity for each claim; and, (2) the State Tort Claims Act does not bar the action.[10]  In this regard, there are two ways by which the State, through the General Assembly, may waive immunity: either by procuring insurance coverage under 18 *Del. C.* § 6511 for each claim; or by statute which waives immunity through express language.[11]   The "General Assembly made it clear when it enacted 18 *Del.C.* § 6511 that it intended to waive sovereign immunity

---

[7] *Wilmington Hous. Auth. v. Williamson*, 228 A.2d 782, 786 (Del. 1967).

[8] *Pauley et al.  v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004).

[9] U.S. Const. amend. XI.

[10] *Pauley,* 848 A.2d at 573.

[11] *J.L. v. Barnes*, 33 A.3d 902, 913 (Del. Super. 2011).

only to the extent that either the State insurance coverage program was funded by direct appropriation (self-insurance) or that the State purchased commercially available insurance to cover the loss."[12]  Furthermore, "[t]his Court will only find that the General Assembly waived the state's sovereign immunity by statute where the statutory language is clear and unambiguous."[13]  The Supreme Court of Delaware has held that "[t]o the extent that any reasonable doubt exists, we construe the General Assembly's intent in favor of the State."[14] Additionally, as to federal claims, the United States Court of Appeals for the Third Circuit has stated that "[w]aivers of sovereign immunity are disfavored absent clear evidence and [the courts] must indulge every reasonable presumption against waiver."[15]

Alternatively, "[w]hen a State participates in a federal financial assistance program in light of the existing state of the law, it is on notice that its acceptance of federal funds may waive its Eleventh Amendment immunity."[16] Therefore, "Congress may require a waiver of immunity as a condition for receipt of federal funds, even

---

[12] *Pauley,* 848 A.2d at 573.

[13] *Kendall v. State*, 2011 WL 1938298, at *2 (Del. Super. Apr. 29, 2011).

[14] *Janowski v. Div. of State Police, Dep't of Safety & Homeland Sec., State*, 981 A.2d 1166, 1171 (Del. 2009).

[15] *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 203 (3d Cir. 2008).

[16] *Id.* at 198 (citing *Edelman v. Jordan*, 415 U.S. 651, 687 (1974)).

9

though Congress could not order such a waiver directly."[17]

A plaintiff must overcome the defense of sovereign immunity in order to establish jurisdiction necessary to survive a motion to dismiss.[18] Therefore, the "[p]laintiff bears the burden of establishing that sovereign immunity has been abrogated."[19] For example, in *Pauley et al v. Reinoehl*, the court granted summary judgment with respect to a plaintiff's negligent training and supervision claim because the plaintiff failed to cite any statute evidencing that the General Assembly waived the State's immunity.[20] In order to state a claim against the State, a plaintiff must identify a statute clearly expressing the General Assembly's intent to waive sovereign immunity,.[21]

Here, the Smith Plaintiffs conceded at oral argument that sovereign immunity bars their state law claims against the State Defendants with one exception. Namely, they claim that Ms. Smith's allegations of gross and wanton negligence in hiring and supervising Bunkely was adequately plead, which is sufficient to impose liability under

---

[17] *Id.*

[18] *Stone v. Dep't of Hous. & Urban Dev.*, 859 F. Supp. 2d 59, 63 (D.D.C. 2012).

[19] *Id.*

[20] *Pauley,* 848 A.2d at 573-74.

[21] *Id.* at 574.

10

the State Tort Claims Act, 10 *Del. C.* §4001.  The State Tort Claims Act provides a qualified immunity to state employees, only in their individual capacities, exempting them from liability.[22]  The defense of qualified immunity may be raised when: "(1) the alleged act or failure to act arises out of and in connection with the performance of official duties involving the exercise of discretion; (2) the act or failure to act was done (or not done) in good faith; and (3) the act or failure to act was done without gross negligence. A plaintiff need only prove the absence of one of these elements to defeat qualified immunity."[23]

Nevertheless, the Delaware Supreme Court has held that "[g]rossly negligent acts per se and the State Tort Claims Act come into play only **after** an express intent to waive sovereign immunity has been identified."[24]  The State Tort Claims Act is an additional defense, not a waiver of sovereign immunity, and applies only where the General Assembly has waived sovereign immunity in one of the methods discussed *supra*.[25]  In the case at bar, Plaintiffs proffer no express waiver of sovereign immunity.

---

[22] *J.L.*, 33 A.3d at 914; *see also Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Dehorty v. New Castle Cty. City Council*, 560 F.Supp. 889, 890 n. 3 (D.Del. 1983); *Rappa v. Hollins*, 991 F.Supp. 367, 371 n. 9 (D.Del. 1997).

[23] *J.L.*, 33 A.3d at 914.

[24] *State of Delaware Dep't of Health & Soc. Servs. v. Sheppard*, 864 A.2d 929, at *1 (Del. 2004) (Table)(emphasis added).

[25] *Id.; see also Doe v. Cates*, 499 A.2d 1175, 1180-81 (Del. 1985).

Therefore, the State Tort Claims Act is irrelevant to the discussion of the state law claims at issue.

Furthermore, even if there was a waiver of sovereign immunity, the State Tort Claims Act would still not apply to the case at hand because the State officials are not being sued in their individual capacities. Qualified immunity applies to defendants in their individual capacities only.[26] Plaintiff's amended complaint limits the claims against these officials to their official capacities. Furthermore, although the John Doe Defendants are listed in their individuals capacities, the State Tort Claims Act still does not permit a claim because John Does are fictitious names bearing no legal relevance.[27]

Turning to the federal law claims, the sixth count in the amended complaint claims a violation of CAPTA. Theresa Smith alleges, in the amended complaint, that Delaware received federal funding through CAPTA, which was intended to assist the State Defendants in improving child protective services. The United States Court of Appeals for the Third Circuit has held that "Congress may require a waiver of immunity as a condition for receipt of federal funds, even though Congress could not order such a waiver directly."[28] Furthermore, as explained in *Haybarger v. Lawrence Cty Adult*

---

[26] *J.L.*, 33 A.3d at 914; *see also Kentucky*, 473 U.S. at 166-67; *Dehorty*, 560 F.Supp. at 890 n. 3; *Rappa*, 991 F.Supp. at 371 n. 9.

[27] Discussed further *infra*.

[28] *Haybarger,* 551 F.3d at 198.

12

*Prob. & Parole*, a state participating in a federal financial assistance program is on notice that its acceptance of federal funds may waive its immunity.[29]  As alleged, because the State received federal funding through CAPTA, the State is on notice that it waives its federal defense of sovereign immunity.  Accordingly, this count will not be dismissed on the basis of sovereign immunity.

The other federal law claims include alleged violations of the United States Rehabilitation Act and the ADA.  Theresa Smith's claim under the Rehabilitation Act is not barred by sovereign immunity for the same reasons discussed regarding CAPTA.  Ms. Smith alleges that the State Defendants are public entities that are recipients of federal funds, and must comply with §504 of the Rehabilitation Act.  "Congress put States on notice that they waive their Eleventh Amendment immunity to [Rehabilitation Act] claims when they accept federal funds."[30]  Therefore, because the State is on notice that it waives sovereign immunity by accepting federal funds under the Rehabilitation Act, and Plaintiffs allege that Delaware has accepted these funds,  the Rehabilitation Act claim against the State Defendants will also not be dismissed on the grounds of sovereign immunity.

The final federal statutory violation allegedly involves the ADA.  The ADA is

---

[29] *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 687 (1974)).

[30] *Id.* at 199.

a federal statute that prohibits employers, and States, from "discriminating against a qualified individual with a disability because of the disability of such individual."[31] The Supreme Court of the United States has held that suits against states for monetary damages under the ADA are barred by the Eleventh Amendment .[32] Therefore, the Court dismisses the portion of count seven alleging that the State Defendants violated the ADA because it is barred by sovereign immunity.

As to counts eight and nine of the amended complaint, both counts allege violations of 42 U.S.C. §1983, which pertain only to Defendant Bunkley and State John Does 1-20. In this regard, "[i]t is well-settled that . . . fictitious name practice is not permitted in the State of Delaware."[33] The reason for this rule is that Delaware has no statute or rule specifically authorizing fictitious name practice.[34] Accordingly, "[f]iling a claim against John Doe has no legal effect in this State."[35] Because the use of John Does has no legal effect, their inclusion in the case does not somehow preserve claims that are otherwise properly dismissed.

---

[31] *Bd. of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 360-61 (2001).

[32] *Id.*

[33] *Clark v. Delaware Psychiatric Ctr.*, 2011 WL 3762038, at *2 (Del. Super. Aug. 9, 2011).

[34] *Haskins v. Kay*, 2007 WL 4662114, at *5 (Del. Super. Sept. 27, 2007).

[35] *Id.*

**B. CAPTA does not provide a private cause of action; Plaintiffs' CAPTA claims must be dismissed.**

Theresa Smith contends that two provisions of CAPTA, 42 U.S.C. §§ 5106a(b)(2)(B)(xix) and 5106a(b)(2)(B)(xx), provide her a private right of action. Specifically, those provisions of CAPTA provide that with regard to a state's child protective services, a

> State plan submitted shall contain
>
> . . .
>
> (xix) provisions addressing the training of representatives of the child protective services system regarding the legal duties of the representatives, which may consist of various methods of informing such representatives of such duties, in order to protect the legal rights and safety of children and families from the initial time of contact during investigation through treatment; [and]
> (xx) provisions and procedures for improving the training, retention, and supervision of caseworkers.[36]

In their Motion to Dismiss, the State Defendants argue that CAPTA does not provide a private right of action. The State Defendants allege that even if it did, Congress intended CAPTA to benefit children, and not individuals such as Theresa Smith, who is an adult. They also argue that the question of whether CAPTA provides a private right of action has been widely considered, and the overwhelming majority

---

[36] 42 *USC* §5106a(b)(2).

of courts have found that CAPTA does not provide a private right of action.[37]

Ms. Smith argues that there is not a clear consensus regarding whether this statute provides a private cause of action, citing a Southern Federal District of New York Case, *Marisol A. by Forbes v. Giuliani*[38]. Furthermore, she cites to the United States Supreme Court case, *Blessing v. Freestone*[39], where the Supreme Court discussed the framework for analyzing whether a particular federal statutory provision gives rise to a federal right. She argues that the specific provision of a federal statute must be analyzed, not the statute as a whole, when determining if the statute provides a private right of action. Furthermore, she contends that in analyzing the particular provisions at issue in CAPTA, the statute satisfies the standard described in *Blessing*, and that families of children are also intended beneficiaries of the statute.

In analyzing suits based upon federal statutes, there is a difference in whether a statute provides (1) a private cause of action as opposed to (2) creating a federal right

---

[37] See *Sheetz v. Norwood*, 608 Fed. Appx. 401, 405 (7th Cir. 2015); *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 865-66 (D.C. Cir. 1996); *Tony L. Ex rel Simpson v. Childers*, 71 F.3d 1182, 1189-90 (6th Cir. 1995); *Hilbert S. v. County of Tioga*, 2005 WL 1460316, at \*14 (N.D.N.Y. 2005) (*citing Mark G. V. Sabol*, 247 A.D.2d 15, 24 (N.Y. Sup. 1998)); *Charles H. v. Whitman*, 83 F.Supp.2d 476, 496-97 (D.N.J. 2000); *Jordan v. City of Philadelphia*, 66 F.Supp.2d 638, 648-49 (E.D.Pa. 1999); *Jeanine B. v. Thompson*, 967 F.Supp. 1104, 1111-19 (E.D.Wis. 1996).

[38] *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996).

[39] *Blessing v. Freestone*, 520 U.S. 329 (1997).

16

that can be enforced by the separate mechanism provided in 42 U.S.C § 1983.[40]   Some

federal statutes organically provide remedies.[41]   In addition, Section 1983 separately

provides a remedy for violations of federal rights created by statutes that do not contain

remedies for violations of those rights.

As the Supreme Court held in *Blessing*:

> [w]e have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First,  Congress must have intended that the provision in question benefit the plaintiff . . .. Second,  the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence . . .. Third,  the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.[42]

Although *Blessing* involves an action brought under 42 U.S.C. § 1983, the analysis for

determining whether a federal statute creates a right for purposes of (1) an organically

created cause of action or (2) an action brought pursuant to § 1983 is the same.[43]   In

both cases, the threshold inquiry is whether the statute at issue confers an enforceable

---

[40] *Gonzoga University v. Doe,* 536 U.S. 273, 284 (2002).

[41] *Id.* at 285.

[42] *Blessing*, 520 U.S. at 340-41 (citations omitted).

[43] *Gonzoga University*, 536 U.S. at 283-85.

17

right.[44]

Since *Blessing*, several jurisdictions have used this three prong standard to evaluate whether CAPTA provides a private right of action organically or whether it creates a right that can be separately enforced pursuant to section 1983 .[45]   As the Eastern District of Pennsylvania recognized in *Jordan v. City of Philadelphia*, "[t]he majority of courts, including the two appellate level courts to address this issue, have ruled that CAPTA does not create a private right of action."[46] In *Jordan*, the Court evaluated the same section of CAPTA that is at issue in the case at bar, 42 U.S.C. § 5106(a).[47] There, the Court adopted reasoning from a prior Sixth Circuit decision that held that the relevant provisions of CAPTA met the two elements of the test but lacked sufficiently specific guidelines to be judicially enforced.   Namely, the Sixth Circuit Court of Appeals found that no legal right was created by CAPTA because the statute

---

[44] *Id.* at 283-84.

[45] *See Henry A. et al. v. Willden et al.*, 678 F.3d 991,1010 (9th Cir. 2012) (recognizing that "[e]very federal district court to consider the question has found that the more recent versions of CAPTA do not satisfy the *Blessing* test"); *see also Johnson v. Salmon*, 2016 WL 3166385, at *4 (D. Mass. June 6, 2016) (holding that CAPTA "does not create a private cause of action in its express language, nor does it create a private cause of action under 42 U.S.C. § 1983").

[46] *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 648 (E.D. Pa. 1999). The cases cited by Jordan were pre-*Blessing* cases.  However, pursuant to the pre-*Blessing* test, those cases applied the same "vague and amorphous" standard to the CAPTA provisions at issue. They found those provisions to be too vague or amorphous to create a federal right.

[47] *Id.*

18

merely created a generalized duty.[48]  Generalized duties created in federal statutes are not specific enough to satisfy the prong of the test requiring that the interest the plaintiff asserts is specific enough to not be "vague and amorphous."[49]

Plaintiffs rely largely upon the reasoning in the *Marisol* case decided by the Southern District of New York.  In *Marisol,* plaintiffs consisted of eleven children, all of whom suffered severe abuse and neglect.[50]  The defendants were officials from the New York City Administration for Children's Services.[51]  The children alleged that the defendants mishandled their cases through the defendants' actions or inactions, depriving the children of their rights, *inter alia*, under  two provisions of CAPTA, 42 U.S.C. §§ 5106a(b)(2) and 5106a(b)(3).[52]  These provisions require that " a state, as a condition of federal funding, to initiate a prompt investigation into all reports of abuse or neglect and to take immediate steps to protect children whom the state believes have suffered or are at risk of suffering abuse or neglect."[53]  Second, they also require a state

---

[48] *Tony L. By & Through Simpson v. Childers*, 71 F.3d 1182, 1188-89 (6th Cir. 1995).  Here, the Sixth Circuit, pre-*Blessing*, held that CAPTA was too vague or amorphous to create an enforceable right.

[49] *Id.*

[50] *Marisol*, 929 F.Supp. at 669.

[51] *Id.*

[52] *Id.* at 683.

[53] *Id.*

to "have in effect administrative procedures, personnel, training procedures, facilities, and related programs and services to ensure that the State will deal effectively with child abuse and neglect cases in order to be eligible for federal funds."[54] Defendants moved to dismiss these claims on the grounds that plaintiffs, the abused children, did not have a private right of action to enforce the statute. The court in *Marisol* denied the defendants' motion to dismiss the CAPTA claims, finding that the plaintiffs had a private right of action.[55] Contrary to the bulk of persuasive authority available, the *Marisol* Court found that these provisions were not "too ambiguous to be enforced judicially."[56]

Ms. Smith, in addition to relying on *Marisol*, urges the Court to apply the *Blessing* standard to two provisions of CAPTA, 42 U.S.C. §§ 5106a(b)(2)(B)(xix) and 5106a(b)(2)(B)(xx). She contends that CAPTA is intended to benefit families of children, as well as children, thus meeting the first prong of the *Blessing* standard, that the statute benefits the plaintiff. She further argues that the second prong is met because the language in the statute creates an obligation on the State by using the word "shall," and is thus couched in mandatory, rather than precatory, terms. Finally, she

---

[54] *Id.*

[55] *Id.* at 684.

[56] *Id.*

argues that the obligation is not so vague and amorphous that its enforcement would strain judicial competence.

In support of this last prong, Theresa Smith cites to two cases, *Kenny A. v. Perdue*[57] and *Brian A. ex rel. Brooks v. Sundquist*[58], as examples of language that was not too vague and amorphous. Neither of those cases discussed any provision of CAPTA, or the language found in CAPTA. Rather, *Kenny A* examined the Adoption Act in light of the *Blessing* standard. The provisions examined in that Act included, *inter alia*, mandatory requirements that "individual care plans" be developed for children and that "placement in foster homes or other settings that conform to national professional standards" be ensured.[59]

In contrast, in the case at hand, the CAPTA provisions require a state plan to merely address the legal duties of child protective employees, "which **may** consist of various methods . . ."[60] As *Kenny A.* recognized in the context of the Adoption Act, "the language throughout these provisions focuses on the needs of **individual** foster

---

[57] *Kenny A. v. Perdue*, 218 F.R.D. 277 (N.D.Ga. 2003).

[58] *Brian A. ex rel. Brooks v. Sundquist*, 149 F.Supp.2d 941 (M.D.Tn. 2000).

[59] *Kenny A*, 218 F.R.D. at 290-291.

[60] 42 U.S.C. § 5106a(b)(2)(B)(xx) (emphasis added).

children, rather than a systemwide or aggregate focus."[61] CAPTA, however, is distinguishable because its provisions have a systemwide, aggregate focus.

Likewise, Plaintiffs reliance on *Brian A. ex rel. Brooks v. Sundquist* does not convince the Court that it should deviate from the approach most other courts have taken regarding CAPTA. *Sundquist* examined the separate adoption Assistance Act (hereinafter "AAA"). The provision at issue in the AAA gave children subject to adoption the right to "timely written case plans, containing specific mandated elements, which are reviewed and updated at specific intervals . .."[62] Such specific direction was held not to be too "vague or amorphous" to be enforced by the judiciary. [63] However, the *Sundquist* decision recognizes that plans requiring "reasonable efforts" are not too vague or amorphous.[64] For the reasons discussed, CAPTA's generalized systemic requirements require nothing more than the reasonable efforts of the State Defendants to "address" issues in a plan.

On balance, the overwhelming majority of jurisdictions reviewing this issue have

---

[61] *Kenny A*, 218 F.R.D. at 292(emphasis added). In addition, the Court in *Kenny A* examined certain provisions of the Medicaid Act requiring early and periodic screening and treatment of children. *Id.* at 293. Those provisions also specifically mandated medical, screening and diagnostic procedures guaranteed based upon established medical standards. *Id.*

[62] *Sundquist,* 149 F.Supp.2d at 946.

[63] *Id.* at 947.

[64] *Id.* at 949.

held that the specific provisions of CAPTA in question here, 42 U.S.C. §§ 5106a(b) *et seq*, do not create a privately enforceable right. In following this persuasive authority, the Court holds that the analysis in this case is controlled by the third prong of the *Blessing* standard. Namely, the obligations imposed on the State have not been defined with particularity, and are too vague and amorphous for enforcement by the judiciary.

In summary, Plaintiffs do not allege that CAPTA contains a remedy provision. Accordingly, Plaintiffs fail to state a claim regarding a private cause of action under CAPTA. Alternatively, since the CAPTA provisions at issue do not create a private right, Plaintiffs claims alleging CAPTA violations are also likewise not actionable pursuant to § 1983. The State Defendants' motion to dismiss Ms. Smith's CAPTA claims is therefore **GRANTED**.

## C. Accepting all well plead facts as true, Plaintiffs fail to state a claim upon which relief could be granted under the Rehabilitation Act.

In their Motion to Dismiss, the State Defendants argue that (1) Plaintiffs failed to adequately plead that Ms. Smith is a person with a qualifying disability, or (2) that she was discriminated against by the State Defendants solely by reason of her disability. Theresa Smith argues that the federal Rehabilitation Act uses the same definition of disability as the ADA, citing *Fowler v. UPMC Shadyside* as support for

that contention.[65]   Furthermore, Theresa Smith argues, pursuant to *Bordonaro v. Johnston County Bd. Of Ed.*, that she has a mental impairment, and need not plead, or even prove, the specific diagnosis.[66] Additionally, Theresa Smith alleges that her impairment substantially limits a major life activity.   Finally, she contends that Bunkley's harmful conduct towards her was partially motivated by her disability, and that he had knowledge of the disability.  Ms. Smith argues that she need not allege under the Rehabilitation Act that Bunkley's discriminatory actions had only her disability as the sole motivating force.

The Federal Rehabilitation Act, 29 U.S.C.A. § 794,  provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[67] The United States Court of Appeals for the Seventh Circuit, in *Grzan v. Charter Hosp. of Nw. Indiana*, citing the United States Court of Appeals for the Third Circuit, articulated the

---

[65] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 208 (3rd Cir. 2009).

[66] *Bordonaro v. Johnston County Bd. Of Ed.*, 938 F.Supp.2d 573, 579 (E.D.N.C. 2013).

[67] 29 U.S.C.A. § 794(a).

elements of a *prima facie* case for a claim under the Rehabilitation Act.[68] In order for a plaintiff to survive a motion to dismiss a claim under the Rehabilitation Act, "[plaintiff's] *prima facie* case must set out four elements: (1) that [she] is a handicapped individual under the Act, (2) that [she] is otherwise qualified for the [benefit] sought, (3) that [she] was [discriminated against] solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance."[69]

With regard to qualifying status, the Third Circuit in *Fowler* noted that "[a]fter the ADA went into effect, Congress amended the Rehabilitation Act by incorporating the ADA's substantive standards."[70] Section 705(20) of the Rehabilitation Act provides that "[e]xcept as otherwise provided in subparagraph (B), the term 'individual with a disability' means any individual who--(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services provided pursuant to subchapter I, III, or VI of this chapter [29 U.S.C.A. §

---

[68] *Grzan v. Charter Hosp. of Nw. Indiana*, 104 F.3d 116, 119 (7th Cir. 1997) (Quoting *Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir.1983)). *See also  Rose v. Cahee*, 727 F. Supp. 2d 728, 748 (E.D. Wis. 2010).

[69] *Grzan*, 104 F.3d at 119 (quoting *Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir.1983)). *See also  Rose v. Cahee*, 727 F. Supp. 2d 728, 748 (E.D. Wis. 2010).

[70] *Fowler*, 578 F.3d at 208.

720 et seq., 771 et seq., or 795 et seq.]."[71] Furthermore, subsection (B) of Section 705(20) states that, "[s]ubject to subparagraphs (C), (D), (E), and (F), the term 'individual with a disability' means, for purposes of sections 701, 711, and 712 of this title and subchapters II, IV, V, and VII of this chapter [29 U.S.C.A. §§ 760 et seq., 780 et seq., 790 et seq., and 796 et seq.], any person who has a disability as defined in section 12102 of Title 42."[72] Therefore, the Rehabilitation Act incorporates the definitions included in the ADA.

The ADA defines a disability, with respect to an individual, as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C)being regarded as having such an impairment."[73] Furthermore, the ADA defines "major life activities" as including, but not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[74] Additionally, as recognized in *Bordonaro*, the Court held that the term "substantially limits" is "meant to be

---

[71] 29 U.S.C.A. § 705(20).

[72] *Id.*

[73] 42 U.S.C.A. § 12102.

[74] *Id.*

construed broadly," and recognized that when considering a motion to dismiss, there is no record before a court to determine whether the plaintiff's impairment in fact constituted a substantial limitation of a major life activity.[75] For that reason, the Court in *Bordonaro* held that the plaintiff sufficiently alleged she was an individual within the ADA's protected class by simply alleging the impairment and that it affects a major life activity.[76] Likewise, in the case at hand, Ms. Smith sufficiently alleged qualifying status for her claim under the Rehabilition Act.

The State Defendants, however, are correct in that dismissal is warranted because Ms. Smith did not allege she was discriminated against "solely by reason" of her disability. Plaintiffs argue that the Rehabilitation Act's requirement that the discrimination "be solely by reason of her . . . disability" does not require the defendant's action to have only one motivating force. The Plaintiffs, however, do not cite authority in support of this proposition.

In so arguing, Plaintiffs actually advance the causation standard of the ADA as opposed to that of the Rehabilitation Act.[77] The first line of statutory interpretation

---

[75] *Bordonaro*, 938 F.Supp.2d at 579.

[76] *Id.*

[77] *Lewis v. Hunboldt Acquisition Corp. Inc*., 681 F.d 312, 315 (6ᵗʰ Cir. 2012)(where the Court contrasts the causation standard of the Rehabilitation Act which requires the discrimination to be "solely by reason of his or her disability" with the ADA that merely requires the discrimination to be "by reason of such disability.").

requires that statutes be given their plain meaning.[78] Here, the use of the word solely in the statute means just that.

In reviewing jury instructions applicable to the Rehabilitation Act, the Fifth Circuit Court of Appeals recognized the plain meaning of this provision and rejected the argument Plaintiffs raise regarding causation. Namely, in *Soledad v. U.S. Dept. Of Treasury*, the Fifth Circuit held that the "plain language of the [Rehabilitation Act] clearly requires the use of a "solely because of" form of causation.[79] That Court specifically rejected the argument that the disability only needs to be a "motivating factor." [80] As the Federal District Court for the Eastern District of Texas held "[u]nlike...ADA claims where Plaintiffs can recover on mixed motives, the Rehabilitation Act requires that the discrimination be based *solely* on the employers disability."[81] The ADA and the Rehabilitation Act, despite significant overlap, have separate causation standards.

In Plaintiff's amended complaint, were the ADA claim not barred by sovereign immunity, Plaintiffs allegations would have met the ADA standard for causation. Its

---

[78] *Freeman v. X-Ray Associates, P.A.*, 3 A.3d 224, 230 (Del. 2010).

[79] *Soledad v. U.S. Dept. Of Treasury*, 304 F.3d 500, 504 (5th Cir. 2002)

[80] *Id.*

[81] *Kurth v. Gonzales*, 472 F. Supp. 2d 874, 879 (E.D. TX 2007) (emphasis in original).

standard is merely a "but for" standard. However, nowhere do Plaintiff's allege that Bunkley's reason for sexually harassing and assaulting Ms.Smith was based solely on her alleged disability. Moreover, in the context of claims such as this, that particular allegation would not logically follow. Accordingly, the State Defendant's motion to dismiss Plaintiff's Rehabilitation Act claims pursuant to Rule 12(b)(6) is also **GRANTED**.

## V. CONCLUSION

In conclusion, the State Defendant's Motion to Dismiss is granted for the afore-mentioned reasons.

**IT IS SO ORDERED**

/s/Jeffrey J Clark<br>
Judge