# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| ERICA MURPHY and EDWIN SANCHEZ as Guardians ad Litem of J.S., a Minor, ALFRED EVANS, and KAIMYHRE IBN-BRITT-JACKSON, | ) ) ) ) ) ) | **C.A. No. N25C-07-163-CEB** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DELAWARE STATE POLICE OFFICER CORPORAL DEMPSEY R. WALTERS, NEWPORT POLICE OFFICER THOMAS D. KASHNER, DELAWARE STATE POLICE OFFICER CORPRAL EARL MARCHIONE, DELAWARE STATE POLICE DETECTIVE DAVID ARMSTRONG, JANE DOE9S0, JOHN DOE9S0, DELAWARE STATE POLICE DEPARTMENT, NEWPORT POLICE DEPARTMENT, and ELSMERE POLICE DEPARTMENT, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: October 31, 2025
Decided: November 12, 2025

## MEMORANDUM OPINION

*Upon Consideration of Plaintiffs' Motion to Proceed Anonymously*; **GRANTED in part, DENIED in part.**

*Upon Consideration of Defendants' Motion to Dismiss*; **GRANTED in part, DENIED in part.**

Christofer C. Johnson and Clifford R. Wood, Jr., THE JOHNSON FIRM LLC, Wilmington, Delaware. *Attorneys for Plaintiffs*.

Michael F. McTaggart and Helene Episcopo, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware. *Attorneys for Defendant New Castle County Police Department*.

Scott G. Wilcox, GIORDANO & GAGNE, LLC, Wilmington, Delaware. *Attorney for Defendant Newport Police Officer Thomas D. Kashner and Newport Police Department*.

Daniel A. Griffith and Jamie L. Lenko, WHITEFORD TAYLOR & PRESTON, LLC, Wilmington, Delaware. *Attorneys for Defendant Elsmere Police Department*.

**Butler, R.J.**

## INTRODUCTION

This decision requires the Court to examine a motion to dismiss a complaint filed against certain police officers and their government agency employers, as well as the use of pseudonyms for Plaintiffs and fictitious names when the identity of other police officers unknown at the time of filing the complaint.

2

# THE ALLEGATIONS

The Complaint recites the facts of a case that received some notoriety in the local press. Delaware State Police ("DSP") Corporal Dempsey Walters lived in Elsmere. Several days before the fateful day in question, Walters, while off duty, encountered Plaintiff Alfred Evans smoking marijuana behind a maintenance building in Elsmere. Walters and Evans had a "negative interaction" in which Walters called the Elsmere police department and asked them to escort Mr. Evans home.[1]

Then on August 21, 2023, three young men walked past Walters' front door. Walters was not at home, but his girlfriend was. One of the youngsters, J.S, a Plaintiff here, kicked the front door in a gesture called "Ding Dong Ditch." Alarmed at the calamity, girlfriend reviewed the Ring camera footage and called Walters, who was on duty as a DSP officer. She provided a description of the three minors to Walters, who in turn called 911 with a reported "attempted home invasion."

Walters then went to Newport where he knew Evans lived. There, Walters met with two Newport PD officers and accompanied them to Evans' home. Suspecting Evans as one of the "Ding Dong Ditch" perpetrators, Walters forcibly removed Evans from the residence, took him to the ground, cuffed him and put him

---

[1] Compl., ¶36.

3

in the patrol vehicle of Newport Officer Kashner. For reasons not explained in the Complaint, Evans' friend Kaimyhre Ibn Britt-Jackson, who was in the house at the time, was also cuffed and detained in the Kashner's police car. Again, without explanation in the Complaint, Britt-Jackson and Evans were detained in Kashner's police vehicle for some two and half hours and then released without charges.

Meanwhile, Walters left Newport and went to Elsmere, where DSP Corporal Marchione had located and detained J.S. and his friends based on the Ring doorbell descriptions. J.S. was on the ground and handcuffed by Marchione. That notwithstanding, upon Walters' arrival, Walters gratuitously assaulted J.S. and, once J.S. was secured in a police vehicle, Walters turned off his body worn camera, entered the rear seat and again assaulted J.S. J.S. suffered numerous facial injuries as a result.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint in July 2025, along with a Motion to Proceed Anonymously. In August, the New Castle County Police Department moved to dismiss the Complaint and responded to Plaintiffs' Motion to Proceed Anonymously. A briefing schedule ensued and the motion has been fully briefed. In September, the Newport Police Department filed its motion to dismiss on behalf of the Police Department and Officer Thomas Kashner, a member of the police department. That

4

motion has been answered by Plaintiffs. The Elsmere Police Department also moved to dismiss and Plaintiffs have answered that motion as well.

The remaining individual defendants and the Delaware State Police have not yet responded to the Complaint.

## ANALYSIS

### I.     Plaintiffs' Motion to Proceed Anonymously[2]

Plaintiffs are uncertain of the identity of several of the police officers involved in the alleged torts against the Plaintiffs and have attempted to hold a place for their names pending discovery of the identities of these unnamed officers.[3] Defendants urge that use of fictitious names as place holders is not permitted under Delaware law, and those names should be stricken from the Complaint.[4]

Support for the Defendants' proposition is quite consistent in the case law.[5] As put succinctly enough in one opinion: "[F]ictitious name practice is not permitted. This is because there is no statute or rule specifically authorizing fictitious name practice. Filing a claim against 'John Doe' has no legal effect in this

---

[2] Plaintiffs' request was twofold: to allow Plaintiffs to proceed anonymously and to use fictitious names for unidentified Defendants. As to the first request, Plaintiffs seek only to use a pseudonym for minor Plaintiff J.S. As yet, there is no opposition from any Defendant to using a pseudonym for Plaintiff and that request is therefore granted.

[3] Pl.'s Mot. to Proceed Anonymously, ¶18.

[4] Def. New Castle County's Resp. to Pl.'s Mot. to Proceed Anonymously, ¶¶ 2-3.

[5] *See, e.g., Mergenthaler v. Asbestos Corp. of America*, 500 A.2d 1357 (1985) (holding statute of limitations not tolled by use of fictitious names).

State."[6]  It appears that this rule holds equally true regardless of whether the claims are common law torts, or "constitutional torts" brought under section 1983.[7]

Plaintiffs suggest that fictitious names may be used in "compelling and unusual circumstances" and cite *Clark v. Delaware Psychiatric Center* in support.[8] But *Clark* does not say that: it dismissed a *pro se* claim by a state hospital patient on statute of limitations grounds.[9]  The plaintiff in *Clark* named "John Doe" defendants, much as Plaintiffs did here, because he did not know who they were.  The *Clark* Court disallowed it, saying it was only permitted in compelling and unusual circumstances, and cited – perhaps a bit loosely – the case of *John Yoe #1 v. Catholic Diocese of Wilmington, Inc.*[10]  But *Yoe* was not a case in which the Plaintiff could not identify the tortfeasor; it was a case in which the Plaintiff sought permission to use a pseudonym to identify *himself* as a victim of sex abuse by a priest.  The use of pseudonym to protect a party from public embarrassment is quite different from the use of fictitious names as a place holder for an unnamed defendant.  *Yoe* was not a case of "compelling and exceptional circumstances" permitting a plaintiff to use

---

[6] *Crawford v. Syngenta Crop Prot., LLC,* 2024 WL 2831554, at *13 (Del. Super. May 31, 2024).

[7] *See Smith v. Bunkley*, 171 A.3d 1118, 1125 (Del. Super. 2016) (dismissing a §1983 claim against twenty John Does).

[8] Pl.'s Resp. Br. in Opp'n to New Castle County's Mot. Dismiss, at 9.

[9] *Clark v. Del. Psychiatric Ctr.*, 2011 WL 3762038, at *2 (Del. Super. Aug. 9, 2011).

[10] *John Yoe #1 v. Catholic Diocese of Wilm., Inc*. C.A. No. 09C-06-188 (Del. Super. Mar. 15, 2010).

"John Doe" as a place holder for defendants as yet unknown. No Delaware case brought to the attention of the Court has done so.

Proceeding from the unfounded assumption that Delaware recognizes a "compelling and exceptional circumstances" exception to the prohibition on fictitious names, Plaintiffs argue that the Law Enforcement Officers Bill of Rights ("LEOBOR") presents such a compelling and exceptional circumstance.[11]

Plaintiff says that "LEOBOR impedes any plaintiff's ability to timely identify and serve culpable officers, thereby frustrating their right to recovery and rendering fictitious name practice a necessary procedural safeguard in cases involving unknown actors within law enforcement agencies."[12] This broadside on a statute may be fair or not, but the statute is the law of Delaware and the Court is not in a position to override it. The Court notes that the LEOBOR was recently amended by the General Assembly to include "Authorized Disclosures."[13] Whether Plaintiffs fit within or without such authorized disclosures is not an issue before the Court. The point is, LEOBOR says whatever it says and following the statute leaves no room for the Court to determine what is "compelling and exceptional."

---

[11] Pl.'s Resp. Br. in Opp'n to New Castle County's Mot. Dismiss, at 10-11.
[12] *Id.* at 10; 11 *Del. C.* §§9200-11.
[13] *See* 11 *Del. C.* §9210 (effective Aug. 7, 2023).

7

For these reasons, the John and Jane Doe allegations are stricken from the Complaint.

## II. Defendants' Motions to Dismiss

### A. Immunity Under the County and Municipal Tort Claims Act

New Castle County, the Town of Elsmere and the Town of Newport are all "governmental entities," as are their respective police agency "instrumentalities."[14] Under the County and Municipal Tort Claims Act ("CMTCA") all governmental entities and their instrumentalities are immune from suit "on any and all tort claims seeking recovery of damages."[15] Despite this general bar on liability, Plaintiffs argue that they "do plead sufficient facts to satisfy the carve out exception under 10 *Del. C.* § 4012, where liability may attach when a government employee, including a police officer, commits a negligent act in the performance of their duties."[16] Plaintiffs' reading of the statute is incomplete– section 4012 does not provide a general "carve out" for negligent acts, but instead provides three limited instances in which negligent acts or omissions may lead to liability. Plaintiffs do not adequately plead that any of these three narrow instances apply to the present facts. Plaintiffs have not articulated any relevant exceptions to the CMTCA's bar on

---

[14] *See* 10 *Del. C.* §4010(2).
[15] *Id.* §4011(a).
[16] Pl.'s Resp. Br. in Opp'n to New Castle County's Mot. Dismiss, at 8.

liability, so the governments and their police departments are therefore dismissed as to the state law tort claims in the Complaint.

The same cannot be said for the individual police officer defendants. 10 *Del. C.* §4011(c) provides that:

> An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent.

Of the individual Defendants named in the Complaint, only Newport Police Officer Kashner has moved to dismiss, but his stated grounds are that there is no allegation that he did anything at all, not that he is immune under the CMTCA. We will therefore deal with Officer Kashner separately from the immunity issues.

## B.  Liability Under 42 U.S.C. §1983 and *Monell*

42 U.S.C. §1983 provides that any person who, under color of law, deprives a citizen "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Plaintiffs in this action have levelled several claims against both the governmental entity defendants and the individual named police officers alleging violation of their civil rights secured by section 1983.

### 1. *Governmental Entities Immune From State Tort Claims*

We have already discerned that the government entity defendants are immune under state law for common law torts. Section 1983 provides a cause of action for violations of federal constitutional rights. But section 1983 does not grant what state law denies: just as the government is immune under the CMTCA, "ordinary" torts, committed by the state through its agents, are not cognizable under section 1983. Plaintiffs here appear to understand this concept: the state tort claims in the Complaint, such as battery and false imprisonment, do not name the governmental defendants.

### 2. *Monell Liability Requires a "Policy or Custom"*

In *Monell v. Department of Social Services of the City of New York*,[17] the U.S. Supreme Court examined an allegation that a municipal agency was violating the civil rights of New Yorkers through the denial of services. The Court first concluded that liability could not be imputed to a municipality for the tortious acts of its employees- "in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory."[18] Therefore, the government entities named in the Complaint may not be held liable through *respondeat superior*.

---

[17] 436 U.S. 658 (1978).
[18] *Id.* at 691.

But the Court did hold that section 1983 liability may be imputed through other means: "[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government entity is responsible under §1983."[19] So, while a single incident of violation of civil rights by an isolated employee would not trigger local government liability, a "policy or custom" of the employee – or several employees – may be evidence that the local governmental entity has either promoted the practice or at least acquiesced in it.[20] This liability may be termed "*Monell* liability" or "policy or custom liability" and it is actionable under section 1983.

### 3. *Monell Liability Does Not Attach to the Moving Defendants*

Plaintiffs have invoked section 1983 in naming governmental entity Defendants in several of the counts in their Complaint. The most obvious is Count V, which claims section 1983 liability "[c]aused as a result of a government custom, even though such custom has not received formal approval through decision-making channels." Armed with our understanding that liability for these entities must spring not from the singular conduct of the police officers named in the complaint, but from

---

[19] *Id.* at 694.

[20] *Id.* at 690 ("Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." (quoting *Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970)).

the entities' custom or practice of authorizing, encouraging or allowing violations of the type alleged in the Complaint, we review the allegations of the Complaint specifically.

Count V alleges that the Delaware State Police failed to properly "train, supervise and discipline their employees and agents."[21]  Notably, these allegations are specific to the Delaware State Police and are not levelled at Defendants Newport, Elsmere or New Castle County.  None of those defendants are mentioned at all in Count V.  The Delaware State Police has not entered any pleadings in this matter.

Count VIII charges that "all named Defendants" conspired to violate Plaintiffs' civil rights, in violation of 42 U.S.C. §1985.  But the only activity allegedly part of this conspiracy relates to the fact that Walters allegedly "recruited the officers over the radio and continued to receive their help."[22]  That allegation may involve individual officers in a conspiracy, it does not imply any custom or practice of any of the governmental agencies.

Count X charges that "all named Defendants" violated the 14th Amendment Equal Protection Clause by failing to provide medical care.  Again, the allegation is supported only by a claim that J.S. was held in a patrol car for a time before being

---

[21] Compl., ¶95.
[22] Compl., ¶112.

12

taken for medical care. There is no claim that doing so was part of any custom or practice by any of the governmental agencies that employed the police officers involved.

It thus appears that no moving Defendant (New Castle County, Elsmere or Newport) are identified in any of the Counts as having any custom or practice that might implicate section 1983 liability under *Monell.*

Because New Castle County, Elsmere, Newport and their police departments are all governmental entities, immune from suit under the CMTCA for common law torts and no custom or practice of any of these agencies have been identified that would support *Monell* liability under section 1983, the Complaint will be dismissed as to these Defendants.

**V. Individual Defendant Kashner**

The only individual named in the Complaint that has moved for dismissal is Officer Kashner of the Newport Police Department. He is named in Count IV (false imprisonment) insofar as Walters placed Evans and Britt-Jackson in Kashner's patrol car and they were kept there for two and a half hours before being released. He is also named in Count VI for a violation of section 1983 insofar as the detention of Evans and Britt-Jackson in Kashner's patrol car was also an unlawful arrest in

13

violation of the 14th Amendment. He is named in Count IX (failure to intervene) and Count X (failure to provide medical care).

The issue here, of course, is not whether Kashner is in fact liable for some or any of these allegations. Rather the question is whether he is immune from such complaints and whether they are sufficiently pled to move the case through to discovery, at which point we will presumably learn if there is any evidence to support the allegations.

It is difficult at this early stage to piece together who did what and when. We do not have, for example, a description of why Kashner was on the scene at all or why his patrol car was used to place Evans and Britt-Jackson, or why they were left in the car for two and half hours. The reasons may be completely benign, or Kashner may have kept them in the patrol car for motives other than faithful execution of his duties as a law enforcement officer.

The Court's duty at this early stage is to read the Complaint in a light most favorable to the Plaintiffs. When so read, Plaintiffs present at least a conceivable basis for relief: that Kashner colluded with Walters to violate the rights of Evans and Britt-Jackson by imprisoning them in Kashner's vehicle. If those facts prove out, they could make out a case of a state tort claim for which immunity is waived under

14

the CMTCA or a violation of civil rights under section 1983 for which Kasher is personally liable.

The motion to dismiss the Complaint as to Defendant Kashner must therefore be **DENIED**.

**IT IS SO ORDERED.**

/s/ **Charles E. Butler**
Charles E. Butler, Resident Judge

15